IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SEAN MCDERMOTT, <br><br> Plaintiff, <br><br> v. <br><br> ARCELORMITTAL U.S.A., LLC, et al., <br><br> Defendants. <br><br>_____ <br><br> CINCINATTI INSURANCE COMPANY, <br><br> Intervenor-Plaintiff, <br><br> v. <br><br> ARCELORMITTAL U.S.A., LLC, et al., <br><br> Defendants. | No. 18-cv-03529 <br><br> Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

While cleaning debris from a blast furnace in East Chicago, Indiana, Plaintiff Sean McDermott stepped into an uncovered hole and injured his lower right leg and right shoulder. He subsequently brought this action against Defendant ArcelorMittal U.S.A., LLC ("AMUSA"), the owner of the steel mill where he was injured, and Defendants Code Red Safety and Rental, LLC, GM Safety and Supply, LLC, and Solid Platforms, Inc., each of which was allegedly involved in ensuring the safety of McDermott's work environment. In his Complaint, McDermott asserts that Defendants negligently caused his injuries through various acts and omissions. McDermott previously received workers' compensation benefits paid by Intervenor-Plaintiff Cincinnati Insurance Company ("CIC"). CIC has filed an Intervenor Complaint demanding judgment against Defendants for the workers' compensation benefits it paid to McDermott. (Dkt. No. 61.) Now,

McDermott moves to adjudicate CIC's claims (Dkt. No. 141), and AMUSA moves to join CIC's motion. (Dkt. No. 147.) For the reasons given below, AMUSA's motion to join is granted, and CIC and AMUSA's joint motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from McDermott's Local Rule 56.1 submission and are undisputed.[1]

On October 19, 2016, McDermott was employed by Roger & Sons Construction, Inc. ("Roger & Sons"). (Intervenor-Pl.'s Resp. to Pl.'s Statement of Facts ("IPRPSOF") ¶ 6, Dkt. No. 149.) That day, Roger & Sons assigned McDermott to work at a steel mill owned by AMUSA in East Chicago, Indiana. (*Id.* ¶ 7.) At the mill, McDermott fell into an uncovered hole and injured his right leg and right shoulder. (*Id.* ¶ 8.)

Roger & Sons had a workers' compensation insurance policy provided by CIC. (*Id.* ¶ 10.) McDermott filed claims for workers' compensation benefits and CIC paid his medical bills, temporary total disability, and permanent disability benefits totaling $100,941.38. (*Id.* ¶¶ 9, 11–13.) Roger & Sons was required to secure workers' compensation insurance for its employees pursuant to a contract with AMUSA that was in effect when McDermott was injured. (*Id.* ¶¶ 15–16.) The contract specifically required the policy to "contain a waiver of subrogation in favor of Owner's Indemnities [AMUSA, any entity controlled by AMUSA's parent company, and their directors, officers, employees, and agents]" and to "cover Owner [AMUSA] as an additional insured." (Pl.'s Statement of Facts ("PSOF"), Ex. 7, Contractor Work Master Agreement §§ 1,

---

[1] Although the moving parties style their request as a motion to adjudicate CIC's subrogation claim, it is clear that they are seeking summary judgment on CIC's Intervenor Complaint under Federal Rule of Civil Procedural 56. Indeed, the parties followed the procedural requirements of that rule, with McDermott filing a statement of facts pursuant to Local Rule 56.1 and CIC filing an appropriate response. (Dkt. Nos. 146, 149.)

2

23(c), Dkt. No. 146-1.) Pursuant to a certificate of insurance issued by CIC, AMUSA was an additional insured to Roger & Sons's insurance policies. (IPRPSOF ¶ 18.) As indicated by that certificate, CIC waived its subrogation rights in relation to the workers' compensation and employer's liability policy. (*Id.* ¶¶ 19–20.)

## DISCUSSION

### I. Procedural Posture

CIC's Intervenor Complaint does not name McDermott as a defendant. (Dkt. No. 61.) Instead, it seeks judgment against Defendants for repayment of the workers' compensation benefits that CIC paid out to McDermott. (*Id.*) McDermott moves to "adjudicate" CIC's claims, contending that CIC waived its right to pursue payment from Defendants pursuant to its insurance policy, which named AMUSA and Roger & Sons as insured parties. (Dkt. No. 141.) On his own, McDermott has no clear standing to enforce this waiver: he is not a party to the insurance contract and, in any event, he is not named as a defendant by CIC. However, AMUSA has moved to join McDermott's motion. (Dkt. No. 147.) AMUSA was insured by the policy at issue and is named as a defendant by CIC. And CIC does not challenge AMUSA's standing to enforce the terms of the policy or its right to "join" McDermott's motion. Thus, the Court grants AMUSA's motion to join (Dkt. No. 147) and finds that any procedural obstacle to McDermott seeking summary judgment on claims actually asserted against AMUSA and the other Defendants is avoided.[2]

### II. Subrogation Claims

Under Federal Rule of Civil Procedure 56, "[a] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[2] Solid Platforms, Inc. also filed a short brief in support of McDermott and AMUSA's motion. (Dkt. No. 151.) However, Solid Platforms does not raise any new arguments. Instead, it notes that CIC's initial opposition brief relied on Illinois law, even though the parties have stipulated that Indiana law applies. But CIC has corrected that error by filing an amended brief applying Indiana law. (Dkt. No. 150.)

3

judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a summary judgment motion, the nonmoving party's evidence "is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The moving party is entitled to a judgment as a matter of law [where] the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

CIC's Intervenor Complaint seeks judgment against Defendants for the entire sum of the workers' compensation benefits it paid to McDermott. Indiana law allows an insurer to "collect in [its] own name, or in the name of the injured employee . . . from the other person in whom legal liability for damages exists, the compensation paid or payable to the injured employee." Ill. Code § 22-3-2-13(e). In such a subrogation action, the insurer "stands in the shoes of the insured and takes no rights other than those which the insured had." *LBM Realty, LLC v. Mannia*, 981 N.E.2d 569, 577 (Ind. Ct. App. 2012).

Here, the insurance policy at issue includes a subrogation waiver in favor of AMUSA and its employees and agents. (IPRPSOF ¶¶ 17–20.) CIC concedes that this subrogation waiver prevents it from standing in McDermott's shoes and seeking recovery on his behalf. CIC has thus waived its subrogation claims and does not dispute that summary judgment is appropriate as to its claims for judgment against Defendants. Thus, AMUSA's motion for summary judgment is granted as to CIC's claims against Defendants. But to the extent that McDermott seeks summary judgment in his favor on the subrogation claims—despite the fact that he is not named in them— his motion is denied.

**III.     Lien Rights**

CIC also seeks to proceed under a different theory, asserting that it may participate in this action to enforce its lien rights against McDermott. In other words, CIC does not seek to recover from Defendants based on their alleged negligence with respect to McDermott, but instead seeks to share in any recovery that McDermott ultimately obtains from Defendants.

In its response brief, CIC claims that it always intended to intervene only to enforce its statutory lien rights and did not initiate a subrogation action. That contention is belied by its Intervenor Complaint, which makes no mention of any lien and was brought by CIC "as subrogee" of Roger & Sons. Instead, CIC's response brief appears to be the first time it has announced its intent to enforce a lien against McDermott. Nevertheless, McDermott and AMUSA have directly attacked CIC's ability to assert a lien in this matter, as part of the relief they seek with the instant motion is an order preventing CIC from asserting any lien. So, even though CIC's Intervenor Complaint does not plainly state its intention to assert a lien against McDermott (or even name McDermott as a defendant), the Court will consider whether summary judgment should be granted as to CIC's asserted lien.[3]

The parties' dispute on this point hinges on a distinction between lien rights and subrogation rights. Indiana law grants lien rights to an employer or insurer that makes a workers' compensation payment. Even when an employee receives a workers' compensation payment, he still "may commence legal proceedings against [a person other than the employer] to recover damages notwithstanding the employer's or the employer's compensation insurance carrier's payment." Ind. Code § 22-3-2-13(a). Such an action is known as a "third party claim." *Id.* However, if "judgment is obtained and paid . . . or settlement is made . . . then from the amount

---

[3] As discussed below, Indiana law suggests that CIC may intervene to assert a lien without raising a claim against any party.

5

received by the employee or dependents there shall be paid to the employer or the employer's compensation insurance carrier . . . the amount of compensation paid to the employee." *Id.* In other words, when an employee receives a workers' compensation payment, any subsequent judgment for the same injury goes to the employer or insurer until the total amount of that payment has been paid back, minus the pro-rata share of the costs and expenses of bringing the claim. *Id.* By statute, an insurer who makes a workers' compensation payment has a lien on any subsequent recovery. *Id.* § 22-3-2-13(d).

As discussed above, subrogation is conceptually distinct—in a subrogation action, the insurer stands in the shoes of the injured employee to seek recovery. Under Indiana law, a workers' compensation insurer cannot bring such a suit "where the employee has already maintained a 'successful action,' that is, commenced a lawsuit and brought it 'to a successful conclusion by judgment or . . . pre-trial settlement.'" *Schneider Nat'l Carriers, Inc. v. Nat'l Emp. Care Sys., Inc.*, 469 F.3d 654, 659 (7th Cir. 2006) (quoting *Norris v. U.S. Fid. & Guar. Co.*, 436 N.E.2d 1191, 1193–94 (Ind. Ct. App. 1982)). And when an employee brings such a successful action, "the insurance carrier is a lienholder, not a subrogee." *Id.* (internal quotation marks and citation omitted).[4] Thus, an insurer who sues on an employee's behalf brings a subrogation action, but an insurer who tries to collect against an employee's third-party claim merely enforces a lien.

The disputed issue is whether CIC, by waiving its subrogation rights, also waived its right to enforce a lien against McDermott. The extent of CIC's waiver is a question of contract interpretation. Under Indiana law, where "a contract is unambiguous, the intent of the parties

---

[4] McDermott notes that the *Schneider* case did not involve a contractual subrogation waiver; instead, the court concluded that the insurer did not waive its lien rights by failing to intervene in an employee's action after making a workers' compensation payment. 469 F.3d at 659. However, *Schneider* does support the distinction critical to CIC's arguments in this motion: that an insurer's lien rights under Indiana law operate separately from its subrogation rights.

6

should be determined by the language employed in the document." *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314 (Ind. 1996). However, interpretation of an ambiguous contract term is a question of fact. *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 839 (Ind. Ct. App. 2017). "A word or phrase is ambiguous if reasonable people could differ as to its meaning." *Id.*

As an initial matter, CIC challenges whether McDermott may enforce the subrogation waiver in the contract between Roger & Sons and AMUSA. Generally, a contract cannot be enforced by nonparties. *See M Jewell, LLC v. Bainbridge*, 113 N.E.3d 685, 689 (Ind. Ct. App. 2018). Although McDermott asserts that he is a third-party beneficiary to the contract and may therefore enforce its subrogation clause, *see OEC-Diasonics*, 674 N.E.2d at 1314–15, that question need not be resolved. AMUSA has joined McDermott's motion; as a party to the insurance policy's subrogation waiver with a stake in the dispute, AMUSA may enforce the waiver.

McDermott and AMUSA assert that the subrogation waiver encompasses CIC's lien rights. However, they have pointed to no contractual language establishing as much—ambiguous or otherwise. The insurance certificate at issue states only that a "[w]aiver of subrogation applies." (PSOF, Ex. 8, Certificate of Liability Insurance, Dkt. No. 146-1.)

McDermott and AMUSA contend that an insurer necessarily waives its lien rights when it agrees to a subrogation waiver, although they identify no Indiana caselaw on the subject. Instead, they cite a Fifth Circuit decision holding that an insurer, by waiving its subrogation rights, lost its ability to assert a lien on an employee's subsequent recovery under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq. Allen v. Texaco, Inc.*, 510 F.2d 977 (5th Cir. 1975). That case, however, involved an equitable lien that was "bottomed on the right of subrogation," not an independently existing statutory lien like the one that CIC now seeks to

7

enforce. *See id.* at 981. Because here, CIC's lien rights are rooted in statute and are not dependent on its subrogation rights, the analogy to *Allen* fails. McDermott and AMUSA's other cited authority on this topic are generally also not on point. *See Burdue v. U.S. Steel Corp.*, 676 F.2d 1129, 1132–33 (6th Cir. 1982) (discussing *Allen*'s holding in dicta but ultimately reversing the district court's conclusion that a party had waived its subrogation rights); *Olivas v. United States*, 506 F.2d 1158, 1165 (9th Cir. 1974) (noting that Arizona law treats lien rights under its workers' compensation act "as if they were subrogation rights"); *Castille v. Apache Deepwater LLC*, No. CV 12-02892, 2018 WL 1415695, at *3–4 (W.D. La. Mar. 20, 2018) (concluding that Louisiana law did not void a contractual subrogation waiver but not addressing whether lien rights and subrogation rights operate independently).

      The most analogous case that the parties have identified is *Wausau Underwriters Insurance Co. v. Wedel*, 557 S.W.3d 554 (Tex. 2018). There, a subrogation waiver provided that the insurer would not enforce its "right to recover [its] payments" against the insured company. *Id.* at 556. The insurer, which had paid workers' compensation benefits to an employee of its insured, asserted a right to repayment from any further funds the employee recovered for his injury. *Id.* The insured, which had been sued by the employee, argued the insurer could not collect on any payment that the employer made to the employee. *Id.* at 556–57. The court agreed, finding that an "indirect" recovery by the insurer against the employer (taking funds the employer had paid to the employee) was no more permissible than a direct recovery against the employer. *Id.* at 558. In this case, however, the Court has far less information on the extent of CIC's subrogation waiver—the one-page certificate of insurance presented by the parties states that a subrogation waiver applies, but not much else. In contrast, *Wedel* addressed the full text of the subrogation waiver at issue, allowing for a fuller determination of the extent of the waiver. Further, the *Wedel* court found

support in "more than twenty years of case law unanimously interpreting [the waiver at issue] to foreclose recovery from proceeds paid to an injured employee." 557 S.W.3d at 557. But Indiana caselaw indicates that Indiana treats workers' compensation subrogation rights differently than workers' compensation lien rights. *Schneider*, 469 F.3d at 659. Ultimately, neither the language of the subrogation waiver nor the caselaw presented to the Court demonstrate conclusively that CIC is barred from enforcing a lien against McDermott.

    AMUSA also contends that an action to enforce a lien of the kind at issue here is inherently a subrogation action. But its cited authority does not support that point. *See Erie Ins. Co. v. George*, 681 N.E.2d 183 (Ind. 1997) (addressing a subrogation action in the context of car insurance but not discussing statutory workers' compensation liens under Indiana law); *Lewis v. Lockard*, 498 N.E.2d 1024, 1026–27 (Ind. Ct. App. 1986) (explaining that Indiana's statutory workers' compensation scheme contains "elaborate subrogation provisions" that are "consistent with the strong policy within the Act against double recovery by an injured employee for the same injury"); *Bebout v. F. L. Mendez & Co.*, 37 N.E.2d 690, 692 (Ind. Ct. App. 1941) (noting that an employer's right to collect on a workers' compensation payment against a liable third party is "conferred by statute" and "predicated upon the theory of subrogation" under statutory language in effect in 1941, but not addressing lien rights created by statute).

    AMUSA next points to a clause in the agreement between it and Roger & Sons, in which Roger & Sons waives "the right to file, establish or assert any lien upon any property of any of the Owner Companies." (Contractor Work Master Agreement § 20(a).) "Owner Companies" are defined to include AMUSA and certain entities that are directly or indirectly controlled by AMUSA's parent company. (*Id.* § 1.) But here, CIC asserts a lien against McDermott individually, not against any of the Owner Companies. There is no reason to conclude that the lien

9

waiver between Roger & Sons and AMUSA is relevant to the lien CIC seeks to assert against McDermott. AMUSA also notes that Indiana Code § 22-3-2-13(h) allows an employer to waive its right to reimbursement and, by doing so, to disclaim any obligation to pay its share of the employee's litigation costs and expenses; therefore, it suggests, Roger & Sons's lien waiver extends to its lien against McDermott. But the key issue here is the scope of the lien waiver—which extended only to the Owner Companies, not to Roger & Sons's employees—and not whether Roger & Sons could have waived its lien rights if it had wanted to do so.

AMUSA further asserts that CIC has abandoned its lien by failing to explicitly assert it in its Intervenor Complaint. But an insurer does not abandon its lien rights by failing to raise them in a proceeding such as this. *Schneider*, 469 F.3d at 659. And although AMUSA correctly asserts that a party is bound by its admissions in its pleadings, *see Soo Line Railroad Co. v. St. Louis Southwestern Railway Co.*, 125 F.3d 481, 483 (7th Cir. 1997), it does not follow that a party waives a lien by failing to explicitly assert a claim regarding that lien in a legal action.

As a final note, CIC's assertion of a lien against McDermott is not inconsistent with the purpose of the subrogation waiver. Such waivers are typically employed to prevent costly litigation between contracting parties—here, Roger & Sons and AMUSA. *See S.C. Nestel, Inc. v. Future Constr., Inc.*, 836 N.E.2d 445, 451 (Ind. Ct. App. 2005) (discussing the use of subrogation waivers to "allocate the risk of damage"); *see also Starr Indem. & Liab. Co. v. Tech. Ins. Co.*, No. 16-CV-09553, 2017 WL 4340177, at *3 (N.D. Ill. Sept. 30, 2017) (noting that subrogation waivers are commonly used in construction contracts to allocate risk and to avoid litigation between contracting parties). But here, AMUSA would pay to defend against McDermott's lawsuit whether or not CIC asserted a lien on McDermott's recovery. In many cases, an insurer's lien might disincentivize employees from asserting subsequent suits for their injuries, providing

further protection to the insured parties. McDermott has less reason to bring a claim against AMUSA if he must hand over the first $100,000 he recovers to the insurer that paid his workers' compensation claims.[5]

For these reasons, to the extent McDermott and AMUSA request summary judgment as to CIC's lien rights, that request is denied. They have not demonstrated that CIC waived its lien rights through its subrogation waiver.

## IV. CIC's Intervenor Complaint

Having concluded that CIC may assert lien rights in this matter, a question remains as to whether the Intervenor Complaint is the proper vehicle by which to do so.

CIC admitted in its response brief that it "is not pursuing any claims" but "is merely enforcing a statutory lien on worker's compensation benefits paid to [McDermott.]" (CIC Resp. at 4, Dkt. No. 150.) Yet, as described above, CIC's Intervenor Complaint is styled as a subrogation action against Defendants, with no mention of a statutory lien against McDermott (who is ***not*** named as a defendant). Thus, the Intervenor Complaint, as currently pleaded, would appear insufficient to support a claim to lien rights by CIC. On the other hand, it is not clear that CIC had to file a complaint at all to preserve its lien rights under Indiana law. It appears that CIC asserts a right to intervene in this action pursuant to Indiana Code § 22-3-2-13(h), which states that "[t]he employer may, within ninety (90) days after receipt of notice of [an employee's third-party claim] . . . join in the action ***upon the employer's motion*** so that all orders of court after hearing and judgment shall be made for the employer's protection." (emphasis added). This section of the Indiana Code makes no mention of having to file a complaint asserting claims, in addition to a motion to intervene, to preserve lien rights.

---

[5] The Court does not reach CIC's argument that the subrogation waiver is against public policy.

11

If a complaint is necessary, it is difficult to see how the current Intervenor Complaint is sufficiently pleaded. In that circumstance, CIC would have to seek leave to amend the complaint to proceed. If no complaint is required, however, the sufficiency of the Intervenor Complaint is not an issue. The parties have not broached this procedural issue in their briefing. To clarify this matter, the Court directs CIC to file a written statement and/or motion for leave to amend its Intervenor Complaint within fourteen days. The statement should explain how CIC intends to proceed and specifically address whether CIC purports to intervene pursuant to Indiana Code § 22-3-2-13(h). If CIC seeks leave to file an amended complaint, it must attach a proposed amended complaint to its motion.

## CONCLUSION

For the above reasons, McDermott's motion to adjudicate subrogation claim of Plaintiff Intervenor, Cincinnati Insurance Company (Dkt. No. 141), as joined by AMUSA (Dkt. No. 147), is granted in part and denied in part. Summary judgment is granted in favor of Defendants as to CIC's claims against them, as CIC has waived its subrogation rights. However, summary judgment is denied as to CIC's purported lien against McDermott. Within fourteen days, CIC shall file a written statement and/or motion for leave to amend its Intervenor Complaint. The statement should explain how CIC intends to proceed and specifically address whether CIC purports to intervene pursuant to Indiana Code § 22-3-2-13(h). If CIC seeks leave to file an amended complaint, it must attach a proposed amended complaint to its motion.

ENTERED:

Dated: September 22, 2021

_____
Andrea R. Wood
United States District Judge